Filed 6/13/14  P. v. Burgos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063906 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS259123) |
| AUGUSTINE DAVID BURGOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Francis M. Devaney, Judge.  Affirmed.

Alissa Bjerkhoel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

Augustine Burgos appeals from a judgment convicting him of assault with a deadly weapon and other offenses arising from his participation in an attack on a jail inmate by a group of inmates. Challenging his assault with a deadly weapon conviction, defendant argues the prosecution's evidence did not show a deadly weapon was used during the assault. Challenging gang benefit enhancement findings, he contends (1) the prosecution's evidence did not establish all the statutory elements for a criminal street gang, and (2) the trial court erred in omitting from the jury instructions the definition for the "pattern of criminal gang activity" element. (Pen. Code, § 186.22.)[1] He also asserts instructional error based on the trial court's (1) failure to instruct on simple assault as a lesser included offense of assault with a deadly weapon, and (2) failure to provide cautionary accomplice instructions. We find no reversible error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At about 10:40 a.m. on August 20, 2012, Joseph Bartolome, a Hispanic gang member and an inmate at the George Bailey Detention Facility, was attacked by a group of Hispanic inmates during lunch in the dayroom. A surveillance video capturing the assault was reviewed by deputies who worked at the detention facility, and they identified 11 inmates as participants in the attack on Bartolome, including defendant and codefendants James Martinez, Ismael Hernandez, and Jason Arrona. As we detail below, defendant—who was a Mexican Mafia "shot caller" at the detention facility—was convicted of various offenses arising from the attack. Codefendants Hernandez and

---

[1] Subsequent unspecified statutory references are to the Penal Code.

Arrona testified on their own behalf and admitted their involvement, but presented claims of duress. Codefendant Martinez (who did not testify) presented defenses of mistaken identity and duress. The jury acquitted the codefendants.

After the attack, victim Bartolome told a deputy the inmates had called him a predator. The deputy testified that a predator is a person accused of raping a woman or child, and that such a person is a target for violence in a custodial setting. Several days after the attack, defendant gave two letters to a deputy for mailing; in the letters defendant explained "why he did what he did" to Bartolome, stating that Bartolome was a predator who had sexually assaulted a female.

Relevant to the assault with a deadly weapon charge, the prosecution witnesses acknowledged no weapon was visible in the surveillance video of the fight, and no weapon was found when the inmates and their property were searched after the fight. However, the deputy who transported Bartolome for medical treatment observed he had bleeding cuts and puncture wounds, as well as scratches, a black eye, bruising and swelling on his head and face, and redness on his back. The cuts included a cut on his ear and neck, and cuts on his abdomen. There were two puncture wounds on his right arm. On cross-examination, the deputy acknowledged he did not know what caused the puncture wounds, but testified he "highly doubt[ed]" they could be caused by long fingernails because it is "hard to break through the skin like that." A surgeon who examined Bartolome at the hospital wrote in her report that Bartolome had bruising

3

around his eyes, lacerations to his right ear, and lacerations on his neck and arm.[2]  His

ear laceration required sutures.  The surgeon testified a laceration is a cut on the skin, and

it is usually caused by a sharp object such as a knife, razor blade or piece of metal or

glass.  The surgeon could not specify whether Bartolome's injuries were caused by a

weapon and she acknowledged a laceration could also come from being struck with a fist

or foot; however, she opined that a laceration from a fist or foot is less common.

Relevant to the gang enhancements, prosecution experts described the control of

the Mexican Mafia within custodial facilities and out on the street, and defendant's

involvement with the Mexican Mafia and his local gang.  The experts explained that the

Mexican Mafia, which originated as a prison gang, is now in charge of all the Hispanic

street gangs in southern California.  The organizational hierarchy consists of about 150 to

200 full-fledged members at the top level, followed by associates who have the authority

to enforce the gang's rules in the prison yards and neighborhoods, and "sureños" who

earn their status by "put[ting] in work" as "soldier[s]" on behalf of the gang.  The

majority of the full-fledged Mexican Mafia members are in prison, and about 10 to 20

percent are on the street.  The Mexican Mafia controls people through fear and

intimidation by using its soldiers to attack or kill anyone who violates its rules.  In

addition to its control over Hispanic gang members in jails and prisons, the organization

controls "tens of thousands of gang members" on the street.

[2]	The surgeon had no independent recollection of Bartolome's injuries, and relied on her report to describe the injuries.  The report did not describe the characteristics of the lacerations, and it did not specify there were puncture wounds.

Defendant is a member of the East Side San Diego gang (East Side), which consists mostly of Hispanic males. A gang detective who specialized in investigations of East Side testified East Side was established in 1977 and it currently had almost 300 members. To establish East Side qualified as a criminal street gang, the detective described two instances of criminal gang activity that resulted in convictions of East Side gang members. In one incident, a gang member summoned other gang members to assault a bystander who had witnessed the gang member's vandalism activity; during the attack the gang members repeatedly stabbed the victim and spray painted his face. In the second incident, a gang member got into a fight with a man working on his car in a garage, and in response another gang member arrived with a pair of brass knuckles and assaulted the man. Like other Hispanic street gangs, East Side is subservient to the Mexican Mafia and actively follows its rules on the street. When incarcerated in custodial facilities, Hispanic gangs "at war" with each other outside of custody are not allowed to fight and they become one gang under the Mexican Mafia.

Defendant was identified as a Mexican Mafia shot caller, which is a high ranking associate who runs a custodial facility on behalf of the organization.[3] The shot caller sets the rules for the facility and has the authority to order assaults. If a shot caller orders an attack on an inmate, the sureños are obligated to participate or they will be ostracized and victimized. Relevant to the motive for the assault on Bartolome, under the Mexican

---

[3]     On July 26, 2012 (about one month before the assault), Bartolome was arrested for a parole violation when he was found in possession of a "kite" (a note written in tiny writing giving orders from a gang member in prison or jail). The kite was written by defendant and reflected he was a shot caller.

Mafia rules, rapists and child molesters are "taboo" and a shot caller is required to target them for assault.

Addressing the issue of conduct intended to benefit a gang, a prosecution gang expert testified that when a shot caller from a particular gang orders an assault, his status as a Mexican Mafia shot caller benefits his gang by improving the reputation of the gang; i.e., "for [a gang] to have somebody that is in power representing their neighborhood is huge." The Mexican Mafia also benefits because the assault shows the strength of the organization and allows it to "keep everybody in check" through fear and intimidation.

*Codefendants' Testimony on Their Own Behalf*

After the prosecution presented its case-in-chief, codefendants Arrona and Hernandez testified on their own behalf. Arrona and Hernandez stated defendant was the shot caller at the jail. On the morning of the assault, Arrona's cellmate woke him and told him another inmate had stopped by the cell door and said defendant "had an order. To follow suit. No questions asked." Hernandez, who was the victim's cellmate, did not know an assault was going to occur, but he knew that under the jail rules if he saw Hispanics "jumping someone" he had to participate.

When Arrona was in the dayroom, he saw defendant walking towards the table where the victim was seated. As defendant was approaching, defendant pulled a "shank" (a knife) from his waistband, and then put it back in his waistband. Arrona did not see the blade of the knife, but he saw the handle which was about six inches long.

Hernandez was seated at the same table as the victim, and Arrona was about eight to 10 feet away from their table. Hernandez and Arrona saw another inmate (Contreras)

6

approach the victim, put his arm around the victim's neck, hold him down at the table, and whisper in his ear. Defendant then made stabbing motions on the victim's right side, and other inmates rushed towards the victim and began assaulting him. The victim broke away; defendant did not pursue the victim but yelled out an order to " 'get him out of here' "; and the other inmates followed the victim and continued the attack. During the assault, the inmates screamed out "predator." When an alarm sounded, the inmates stopped the attack and went to their cells.

Arrona and Hernandez testified they participated (or pretended to participate) in the assault because they knew if they did not do so they and their families would be in danger.

Arrona also testified he did not see the knife itself while defendant was at the table assaulting the victim, but he saw defendant's arm "moving forward as if he was holding something" and making a stabbing-type movement. Hernandez testified he did not see a weapon; defendant may have been punching the victim; but it was also possible defendant was using a weapon because his arm was making "repeated stabbing-type motions."

*Jury Verdict and Sentence*

Defendant was charged and convicted of assault with a deadly weapon, assault by means of force likely to produce great bodily injury, and conspiracy, with gang benefit enhancements for each count. The court sentenced him to eight years in prison on count 1 (three years for assault with a deadly weapon and five years for the gang enhancement); stayed the sentences on the remaining counts; and struck prior prison term enhancements.

7

DISCUSSION

I. *Sufficiency of the Evidence for Assault with a Deadly Weapon*

Challenging his conviction of assault with a deadly weapon, defendant argues the prosecution's evidence did not show a deadly weapon was used during the attack, and accordingly the trial court erred in denying his motion for acquittal at the conclusion of the prosecution's case.

To decide whether a motion for acquittal should have been granted at the close of the prosecution's case, we evaluate only the prosecution's evidence, and we view this evidence in the light most favorable to the judgment. (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213; *People v. Rice* (1988) 200 Cal.App.3d 647, 651.) The purpose of a motion for acquittal is " 'to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case.' [Citations.] The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination.' " (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)

Drawing all reasonable inferences in favor of the judgment, the prosecution's evidence supports that a deadly weapon was used during the attack. The evidence showed the victim incurred wounds that were bleeding, and his wounds included a cut on his ear that required sutures, a cut on his neck, cuts on his abdomen, and cuts or puncture wounds on his arms. The examining surgeon testified that lacerations (i.e., cuts) are typically caused by sharp objects and they are less commonly caused by fists or feet. The deputy who observed the victim's wounds opined it was doubtful they were caused by a long fingernail. Given that multiple cuts were inflicted on the victim, the victim was

8

bleeding, and one of the cuts required suturing, the jury could reasonably infer these cuts were caused by a sharp object that constituted a deadly weapon.

To support his claim there was only a suspicion of deadly weapon use and not proof beyond a reasonable doubt, defendant cites facts that could support a contrary finding, including the failure of the video to depict a weapon and the failure to find a weapon after the assault. Defendant has not shown that the video captured a close-up view of his hands during the assault, nor that he could not have successfully disposed of the knife after the assault. The factors cited by defendant do not provide definitive evidence overriding the evidence submitted by the prosecution that supported deadly weapon use.

## II. *Challenges to the Gang Enhancements*

Challenging the gang enhancement findings, defendant argues there was insufficient evidence to qualify East Side and the Mexican Mafia as criminal street gangs, and accordingly the trial court erred in denying his motion for acquittal at the conclusion of the prosecution's case and his new trial motion. He also asserts the court erred in omitting the pattern of criminal gang activity element from the jury instructions.

## A. *General Law: the Gang Enhancement Statute*

The gang enhancement statute applies to conduct intended to benefit a "criminal street gang." (§ 186.22, subd. (b).) To establish that a group is a criminal street gang, the prosecution must show (1) the group has "as one of its *primary activities* the commission of one or more" statutorily-specified crimes, and (2) the group's "members individually or collectively engage in or have engaged in a *pattern of criminal gang activity*." (§ 186.22,

9

subd. (f), italics added.) To satisfy the primary activity element, the commission of one or more of the statutorily enumerated crimes must be one of the group's chief or principal occupations; the occasional commission of the crimes by the group's members does not suffice. (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1222.) The pattern of criminal gang activity element requires the commission or attempted commission of two or more statutorily listed offenses, that the last offense occurred within three years after a prior offense, and that the offenses were committed on separate occasions or by two or more persons. (§ 186.22, subd. (e).) Charged offenses in the current case can be included in the offenses relied upon to establish the primary activity and pattern of criminal gang activity elements. (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1401; *People v. Vy, supra*, 122 Cal.App.4th at p. 1225, fn. 10.) Also, the two predicate offenses required for the pattern of criminal gang activity element need not be violations of different Penal Code provisions; rather, the violations may be based on the same Penal Code provision. (*People v. Loeun* (1997) 17 Cal.4th 1, 10, fn. 4.)

B. *Sufficiency of the Evidence To Establish Gang as Criminal Street Gang*

Defendant claims the prosecution did not show his local gang (East Side) qualified as a criminal street gang. In support, he contends the evidence did not show the gang committed the statutorily specified offenses as a *primary* activity, but rather the evidence merely showed gang members committed three *isolated* incidents of these offenses (i.e., the two assault incidents involving East Side members described by the gang detective, and the current alleged assault committed by defendant). Additionally, he contends there was no showing the Mexican Mafia met the statutory criteria for a criminal street gang,

asserting the Mexican Mafia is a prison gang, not a street gang, and the prosecution did not present evidence to establish the primary activity and pattern of criminal activity elements with respect to the Mexican Mafia.

The primary activity element may be established by evidence showing the group's members consistently and repeatedly have committed statutorily enumerated offenses, or by testimony from a gang expert stating the gang was primarily engaged in the commission of statutorily specified offenses. (*People v. Vy, supra*, 122 Cal.App.4th at pp. 1222-1223.) Drawing all reasonable inferences in favor of the judgment, the prosecution's evidence supports that East Side members have consistently and repeatedly committed assault with a deadly weapon or by means of force likely to produce great bodily injury, which is one of the statutorily enumerated offenses. (§ 186.22, subd. (e)(1).) A gang detective described two incidents in which East Side gang members joined together to commit assaults; one incident involved a stabbing instrument (giving rise to a conviction in June 2012), and the other incident involved brass knuckles. Also, the current charged assault (occurring in August 2012) concerned an East Side gang member (defendant) ordering a group attack based on his position as a Mexican Mafia shot caller. Contrary to defendant's assertion, the jury was not required to view these three assault incidents as isolated incidents committed by East Side gang members. Rather, the jury could reasonably find the three assaults reflected consistent, recurring aggravated assault activity by the gang. (See *People v. Vy, supra*, 122 Cal.App.4th at pp. 1225-1226.)

11

To support his challenge to the primary activity element, defendant notes the prosecution's gang expert did not directly testify the specified criminal conduct committed by East Side gang members was the gang's primary activity, nor did the expert generally testify about what types of crimes the gang committed. This testimony was not necessary given the evidence describing the specific offenses committed by East Side gang members on multiple occasions.

Defendant's citations to two cases in which the appellate courts found insufficient evidence of the primary activity element (*In re Alexander L.* (2007) 149 Cal.App.4th 605 and *People v. Perez* (2004) 118 Cal.App.4th 151) do not persuade us to reach a contrary conclusion. In *Alexander*, a gang expert provided general testimony about assaults and other offenses committed by gang members but with no description of the circumstances of the crimes or the source of his information, and he also testified the vast majority of cases connected to the gang that he had come across concerned graffiti. (*In re Alexander L., supra*, at pp. 611-612.) In contrast here, the gang detective's testimony reflected he was very familiar with East Side's criminal activities; he provided a detailed description of the gang members' assaults and was the investigating officer for one of them; and there was no suggestion the gang focused primarily on graffiti. In *Perez*, the record showed three retaliatory shootings by gang members over a period of less than a week, plus a beating six years earlier. (*Perez, supra*, at pp. 156-157, 160.) The facts in *Perez* reflected a single-week period of retaliatory violence tied to one incident and a lengthy time lapse with no criminal behavior, whereas the jury here could reasonably conclude

12

the repeated, unconnected assaults committed by East Side gang members over a period of several months showed they committed assaults on a regular, ongoing basis.

As to defendant's assertion that the prosecution did not show the Mexican Mafia met the statutory requirements for a criminal street gang, this particularized showing was not necessary. The record shows that although the prosecutor generally argued the gang enhancement could be established with respect to either East Side or the Mexican Mafia, the prosecution focused its evidentiary presentation on qualifying East Side as a criminal street gang. To this effect, the prosecution's gang expert described two assaultive incidents committed by East Side members; the jury was instructed a criminal street gang is a group that has as a primary activity "the commission of Assault with a Deadly Weapon and Vandalism"; and the prosecutor referred to "predicate acts" evidence for East Side during closing arguments. The prosecution's evidence concerning the Mexican Mafia was more general in nature, including testimony the Mexican Mafia uses violence to exert its control through fear and intimidation.

Because the charged assault incident occurred in a custodial setting, it was not necessary for the prosecution to distinguish between East Side and the Mexican Mafia for purposes of establishing the gang benefit enhancement. The record shows that once a Hispanic gang member is incarcerated, the distinctions between the two groups essentially disappear. The prosecution's gang experts testified all the local Hispanic gangs are subservient to the Mexican Mafia, and the diverse gangs become one gang under the Mexican Mafia when gang members are in a prison or jail facility. There is nothing in the gang enhancement statutory scheme suggesting the Legislature intended to

13

require a differentiated evidentiary showing when a local gang member's activities become intertwined with or subsumed by the Mexican Mafia in a custodial environment. Because in the custodial setting the local gangs and the overarching prison gang operate as a single unit, the prosecution's showing that East Side meets the statutory requirements for a criminal street gang sufficed to establish the criminal street gang element of the enhancement with no need for more specific evidence concerning the Mexican Mafia. (See *People v. Williams* (2008) 167 Cal.App.4th 983, 988 [for purposes of gang enhancements, various groups can reasonably be viewed as parts of same organization when record shows "collaborative activities or collective organizational structure"].)

Finally, to the extent defendant argues the gang evidence should not have been admitted and its highly prejudicial effect warranted a new trial, the contention is unavailing. The gang evidence, including with respect to the Mexican Mafia, was highly relevant to the issues of motive for the assault, codefendants' claims of duress, and the gang enhancement allegations.

### C. *Failure To Include Definition of Pattern of Criminal Gang Activity in Jury Instructions*

The trial court provided the jury with the standard jury instruction on the gang benefit enhancement, which told the jury the prosecution had to prove the group's members have engaged in a "pattern of criminal gang activity." (See CALCRIM No. 1401.) However, the instruction provided to the jury did not include the *definition* of pattern of criminal gang activity set forth in the statute and the standard instruction. Thus, the jury was not told the specific statutory definition of this phrase; i.e., the

14

commission or attempted commission of two or more specified crimes; the most recent crime occurred within three years of one of the earlier crimes; and the crimes were committed on separate occasions or were personally committed by two or more persons. (§ 186.22, subd. (e); CALCRIM No. 1401.)

The Attorney General does not dispute the court erred by omitting the definition of this element, but argues the error was harmless beyond a reasonable doubt. (See *People v. Bragg, supra*, 161 Cal.App.4th at pp. 1400-1401.) We agree. As to this error, defendant does not argue the error was prejudicial with respect to East Side, and the record contains compelling evidence that East Side satisfies the statutory requirements for this element. The record shows an East Side member sustained a conviction in June 2012 for an assault involving a stabbing, and in August 2012 defendant (an East Side gang member) committed the current assault with a knife. This evidence reflects that East Side members committed two of the statutorily specified offenses (i.e., two instances of assault with a deadly weapon); the last offense occurred within three years after a prior offense; and the two offenses were committed on separate occasions.[4] As apparently recognized by defendant, given the strength of the evidence that East Side has engaged in

---

[4] The prosecution presented documentary evidence concerning the two predicate offenses committed by East Side gang members described by the gang detective; however, the record on appeal does not include these documents and we have not found anything in the appellate record referencing the date of the second predicate offense. In his reply brief defendant states the first predicate offense (resulting in the June 2012 conviction) occurred in 2011, and the second predicate offense occurred in 2012. In any event, the charged assault by defendant can be used to establish that the last of the predicate offenses occurred within three years of a prior predicate offense. (*People v. Bragg, supra*, 161 Cal.App.4th at p. 1401.)

a pattern of criminal activity as defined by the statute, there is no doubt the jury would have found these requirements satisfied for East Side had it been properly instructed.[5]

Defendant does argue, however, the instructional error was prejudicial with respect to the Mexican Mafia. We reject this contention of reversible error because, as we stated above, in a custodial setting the local Hispanic gangs and the Mexican Mafia essentially merge into a unitary gang. Given that there was no need to separately qualify the Mexican Mafia as a criminal street gang within the statutory definition, there was no prejudicial error arising from the failure to define the pattern of criminal gang activity element.

### III. *Failure To Instruct on Simple Assault as Lesser Included Offense of Assault with Deadly Weapon*

The trial court instructed the jury on simple assault as a lesser included offense of assault by means of force likely to cause great bodily injury (count 2). However, it did not instruct on simple assault as a lesser included offense of assault with a deadly weapon (count 1). Defendant contends the trial court erred in failing to provide the simple assault instruction as a lesser offense of count 1.

A trial court has a sua sponte duty to instruct on a lesser included offense whenever there is substantial evidence for a jury to conclude that the lesser offense, but not the greater, was committed. (*People v. Prince* (2007) 40 Cal.4th 1179, 1265.)

---

[5] Indeed, during discussions with the trial court about whether the documents showing the predicate offense convictions should be provided to the jurors in the jury room, defendant's trial counsel told the court that he was not contesting that East Side was a criminal street gang.

16

Assuming arguendo the trial court should have instructed the jury on simple assault as a lesser included offense of assault with a deadly weapon, the error was harmless under any standard of review. (See *id*. at p. 1267 [reasonable probability of a different outcome standard generally applies to erroneous failure to instruct on a lesser included offense]; *People v. Rogers* (2006) 39 Cal.4th 826, 872 [harmless beyond a reasonable doubt standard may apply when omission of lesser included offense instruction deprived defendant of right to present complete defense].)

The rationale for requiring instruction on lesser included offenses is to avoid forcing the jury into an "'unwarranted all-or-nothing choice'" which creates the risk the jury will convict on the charged offense even though one of the elements remains in doubt because "'the defendant is plainly guilty of *some* offense . . . .'" (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) Here, there was no risk the jury might have convicted defendant of count 1 assault with a deadly weapon even if it had doubts about the deadly weapon use because it was provided no other option for conviction. To the contrary, the jury was provided the options of convicting defendant of count 2 assault by means of force likely to produce great bodily injury or its lesser offense of simple assault. We have no doubt that even without instruction on simple assault as a lesser offense of count 1, if any jurors had discredited the evidence supporting deadly weapon use, the jury would not have reached a guilty verdict on count 1 but would have returned a conviction on count 2 only. (See *People v. Lipscomb* (1993) 17 Cal.App.4th 564, 571.)

## IV. *Failure To Provide Cautionary Accomplice Instructions*

Defendant argues there was substantial evidence that Arrona and Hernandez were accomplices, and accordingly the trial court was sua sponte required to provide the cautionary instructions relevant to accomplice testimony.

When an accomplice is called to testify *by the prosecutor or the defendant*, the trial court has a sua sponte duty to provide cautionary instructions to the jury stating that to the extent the testimony tends to incriminate the defendant it cannot alone be used to convict but requires corroboration, and it should be viewed with caution. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569; see *People v. Howard* (2008) 42 Cal.4th 1000, 1021-1022; *People v. Zapien* (1993) 4 Cal.4th 929, 982; CALCRIM No. 334.) The rationale for requiring the cautionary instructions is that to "the extent an accomplice testifies on behalf of the prosecution, the testimony is subject to the taint of an improper motive, i.e., that of promoting his or her own self interest by inculpating the defendant." (*Guiuan, supra*, at p. 568.) However, when an accomplice is a *codefendant who testifies on his or her own behalf*, different rules may apply because of the potential for prejudice to the codefendant's case. (*People v. Terry* (1970) 2 Cal.3d 362, 398-399.)

When a codefendant/accomplice takes the stand on his or her own behalf and implicates the defendant while also *admitting his or her own guilt*, the courts have concluded the normal rule triggering the sua sponte duty to instruct on the cautionary principles should apply. (*People v. Terry, supra*, 2 Cal.3d at p. 399.) In this circumstance, there is no potential for prejudice to the codefendant's case because he or she has effectively confessed guilt. (*Ibid*.) In contrast, the California Supreme Court has

18

declined to impose the sua sponte duty when a testifying codefendant implicates the defendant but *denies his or her own guilt*, reasoning this is a matter for the trial court's discretion because the "court may properly conclude that the giving of accomplice instructions might improperly prejudice the codefendant's case." (*People v. Ramos* (1982) 30 Cal.3d 553, 581-582; *Terry, supra*, at pp. 398-399; *People v. Catlin* (1959) 169 Cal.App.2d 247, 255 [it might "subject the codefendant to unfair prejudice in the eyes of the jury to give even a limited instruction on accomplice testimony"].)

In more recent cases the California Supreme Court has concluded that even when a codefendant/accomplice testifies on his or her own behalf and denies guilt, the trial court is required to give the cautionary instructions *upon request* by a defendant, reasoning that "just as in the case of an accomplice called to testify by the prosecution, [the codefendant's] testimony was 'subject to the taint of an improper motive . . . .' " (*People v. Box* (2000) 23 Cal.4th 1153, 1209; see *People v. Avila* (2006) 38 Cal.4th 491, 562.) However, our high court has not expressly overruled its earlier decisions in *Terry* and *Ramos* declining to impose a *sua sponte* duty when the testifying codefendant denies his or her guilt. (See *People v. Smith* (2005) 135 Cal.App.4th 914, 928.)

Here, the two codefendants testified on their own behalf and denied their guilt based on claims of duress. Accordingly, under our high court's holdings in *Terry* and *Ramos*, defendant's contention that the trial court had a sua sponte duty to provide the cautionary instructions is unavailing.

Alternatively, even assuming arguendo the trial court should have sua sponte provided the cautionary instructions, the failure to do so was not prejudicial. The failure

19

to give accomplice instructions is harmless if there is sufficient corroborating evidence in the record. (*People v. Avila, supra*, 38 Cal.4th at p. 562.) The corroborating evidence must tend to connect the defendant with the crime without aid or assistance from the accomplice's testimony; however, the corroborative evidence may be slight, may be entitled to little consideration when standing alone, and need not establish all the elements of the crime. (*Id.* at pp. 562-563; *People v. Williams* (2013) 56 Cal.4th 630, 678-679.) Here, there was ample corroborating evidence connecting defendant to the crime independent of the codefendants' testimony. The prosecution presented evidence showing defendant was depicted in the surveillance video participating in the assault on the victim, and defendant was both a gang member and a shot caller for the Mexican Mafia which gave him authority to order assaults. This evidence tied defendant to the alleged offenses. To the extent defendant asserts there was insufficient corroboration of the deadly weapon element for count 1, the contention is unavailing because the corroborating evidence need not relate to each element. In any event, the prosecution's evidence showing the victim incurred cuts consistent with the use of a sharp object, combined with the evidence showing defendant's participation, sufficiently tied defendant to the deadly weapon element of count 1 assault with a deadly weapon.

Further, even without an instruction informing the jury to view the accomplice testimony with caution, the jury would have understood that the codefendants had an incentive to place culpability on defendant and this should be considered when evaluating their credibility. The testifying codefendants presented a duress defense based on their claims that defendant was a shot caller and they had to follow his orders to avoid peril to

20

themselves and their families. Further, the jury was told that when judging a witness's credibility, it could consider whether the testimony was influenced by such factors as bias, prejudice, or a personal interest in how the case is to be decided. (See CALCRIM No. 226.) Based on the duress defense and the credibility instruction, the jurors would have readily recognized they should carefully scrutinize the codefendants' testimony. There is no reasonable probability that had the trial court given the cautionary accomplice instructions the result would have been different. (*People v. Box, supra*, 23 Cal.4th at p. 1209.)

## DISPOSITION

The judgment is affirmed.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McINTYRE, J.

21