Filed 11/25/15  P. v. Peters and Osborne CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONELLE ZENAPHONE PETERS<br>and BRENT DEANDRE OSBORNE,<br><br>    Defendants and Appellants. | B256646<br><br>(Los Angeles County<br> Super. Ct. No. TA127520)<br><br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on November 17, 2015, be modified as follows:

1.  On page 3, the last sentence of the first full paragraph, beginning "We also correct" is deleted and the following sentence is inserted in its place:

We also modify the sentence and remand for a recalculation of defendants' presentence credit.

2.  On pages 16-17, the first 3 paragraphs under the heading "Sentencing" are deleted and the following 6 paragraphs are inserted:

Defendants contend certain modifications in sentencing must be made, as follows.

First, each defendant received a five-year enhancement under section 667, subdivision (a)(1) for a prior serious felony conviction. However, because we have found the evidence insufficient to support the gang enhancement, that enhancement must be stricken.

Section 667, subdivision (a)(1) provides in relevant part that "any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive . . . a five-year enhancement." The term "'serious felony' means a serious felony listed in subdivision (c) of Section 1192.7." (§ 667, subd. (a)(4).) Thus, the prior serious felony enhancement applies only if the current conviction is for a serious felony as defined in section 1192.7, subdivision (c). (See *People v. Taylor* (2004) 118 Cal.App.4th 11, 22-24.)

Here, absent a true finding on the gang enhancement (see § 1192.7, subd. (c)(28), defining serious felony to include "any felony offense, which would also constitute a felony violation of Section 186.22"), none of defendants' current convictions constitute serious felonies under section 1192.7, subdivision (c). Thus, because we have found the evidence insufficient to support the gang enhancement, the section 667, subdivision (a)(1) enhancements must be stricken.

Second, the trial court imposed concurrent one-year terms for defendants' prison priors (§ 667.5, subd. (b)), because they were based on the serious felony convictions that supported the imposition of each defendant's five-year enhancement under section 667, subdivision (a)(1). (See *People v. Jones* (1993) 5 Cal.4th 1142, 1152-1153.)[1] However, now that the section 667, subdivision (a)(1) enhancements must be stricken, the one year terms for defendants' section 667.5, subdivision (b) prison priors can be imposed consecutively.

---

[1] To comply with *Jones*, the section 667.5, subdivision (b) priors should have been stricken, not imposed concurrently. But the error is of no consequence given our modification of the sentence.

2

Third, the abstract of judgment for defendant Peters reflects several prison priors, although he was charged with only one, which the court found true. His abstract should reflect a single prison prior.

On page 16, the last sentence of footnote 6 should be deleted.

On page 17, the word "Third" is changed to "Finally".

On page 19, the entire **DISPOSITION** should be deleted and replaced with:

As to both defendants, the true finding on the gang enhancement (§ 186.22) is reversed on all counts, the gang enhancements are stricken, and the prior serious felony enhancements (§ 667, subd. (a)(1)) are stricken. The matter is remanded to the superior court for resentencing. In resentencing, the court shall impose or strike each defendant's one year prison prior enhancement (§ 667.5, subd. (b)), and recalculate defendants' presentence credits under section 4019. The clerk of the superior court is directed to prepare amended abstracts of judgment reflecting the sentencing modifications and forward them to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

This modification changes the judgment.

Both appellants' petitions for rehearing are denied.

---

\*EPSTEIN, P. J.       WILLHITE, J.       COLLINS, J.

Filed 11/17/15  P. v. Peters and Osborne CA2/4 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RONELLE ZENAPHONE PETERS<br>and BRENT DEANDRE OSBORNE,<br><br>    Defendants and Appellants. | B256646<br><br>(Los Angeles County<br> Super. Ct. No. TA127520) |

APPEAL from judgments of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Affirmed and Modified in part, Reversed in part, and Remanded with Directions.

Allison H. Ting,  under appointment by the Court of Appeal, for Defendant and Appellant Ronelle Zenaphone Peters.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant Brent Deandre Osborne.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendants Ronelle Zenaphone Peters and Brent Deandre Osborne were each charged with two counts of dissuading a witness from testifying (Pen. Code, § 136.1, subd. (a)(1); counts 1 & 2).[2] Defendant Peters alone was charged with three counts of possession of a firearm by a felon (§ 29800, subd. (a)(1); counts 4, 16 & 17), six counts of possession of body armor (§ 31360, subd. (a); counts 6, 11, 12, 13, 14 & 15), one count of possession of an assault weapon (§ 30605, subd. (a); count 5), one count of possession of ammunition (§ 30305, subd. (a)(1), count 7), and three counts of child abuse (§ 273a, subd. (a); counts 8, 9 &10). Defendant Osborne alone was charged with one count of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 18).[3]

As to all the counts except those charging child abuse, it was alleged that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subds. (b)(1) & (b)(4)). It was also alleged that defendants Peters and Osborne had each suffered a prior conviction for a strike offense (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and a serious felony (§ 667, subd. (a)(1)), and had served a prior prison term (§ 667.5, subd. (b)).

A jury deadlocked on the charges of dissuading a witness as to both defendants, and as to defendant Peters it deadlocked on the charge of possession of an assault weapon and one count of possession of a firearm by a felon. The jury acquitted defendant Peters of the three child abuse counts. Over the prosecution's objection, the court dismissed the counts as to which the jury deadlocked.

The jury convicted defendant Peters of two counts of possession of a firearm by a felon (counts 4 & 16), four counts of possession of body armor (counts 6, 11,

---

[2]    All undesignated section references are to the Penal Code.

[3]    There was no count 3 in the information.

2

12 & 13) and one count of possession of ammunition (count 7).  It convicted defendant Osborne of the charged count of possession of a firearm by a felon (count 18).  As to all these counts, the jury found the gang allegation true.

Defendant Peters admitted the allegations of a prior strike conviction, serious felony conviction, and prison term, and the court sentenced him to a total term of 23 years in prison.  As to defendant Osborne, the court found the priors allegations to be true, and sentenced him to a total term of 13 years in state prison.  Defendants appeal from the judgment of conviction.  On several grounds they challenge the gang enhancement finding.  We need consider only one:  that the evidence was insufficient to support a finding that defendants' gang, the 211 Criminals, engaged in a pattern of criminal gang activity.  We agree, and reverse the gang enhancement.  We also correct certain errors in the abstract of judgment and remand for a recalculation of defendants' presentence credit.

## BACKGROUND

I.      *Dissuading a Witness*

Although the charges of dissuading a witness were dismissed after the jury deadlocked, brief mention is required to put the case in context.  The charge was based on defendants' alleged attempt to dissuade Alphonso Gayle and his mother, Alisa Jones, from testifying in the prosecution of Efren Acuna, a member of the 211 Criminals gang, who had shot at a car carrying Gayle and Jones.  In their testimony at trial, both Gayle and Jones linked defendants to the 211 Criminals gang.

3

II.    *Defendant Peters' Weapons*

The evidence leading to defendant Peters' convictions of possession of a firearm by a felon, possession of body armor, and possession of ammunition resulted from searches of his residence at 11431 Spruce Street in Lynwood and an apartment in Long Beach.

A. *Search of Defendant Peters' Residence on Spruce*

Detective Jesus Urrutia of the Los Angeles County Sheriff's Department was the investigating officer in the prosecution of Efren Acuna for shooting at Alphonso Gayle's car, and in defendants' present case. He was assigned to the gang unit and had testified in the past as a gang expert. He grew up in Lynwood, and was very familiar with the local gangs, including the 211 Criminals.

In the investigation of the Acuna case, Detective Urrutia obtained a search warrant for defendant Peters' residence on Spruce, which he and other Sheriff's deputies executed on March 21, 2013, around 6:00 a.m. Defendant's sister, Rhonda, directed them to a bedroom. Deputies found hanging in the closet four bullet proof vests, one of which held armor plates designed to withstand a high powered rifle round. In the bottom dresser drawer, they found two magazines for an A-15 assault rifle. One was unloaded. The other, a high capacity magazine capable of holding approximately 30 rounds, was loaded with nine millimeter rounds. Such magazines are illegal in California and other states because of the large number of rounds they can hold.

Hidden underneath the bottom dresser drawer were three Motorola walkie-talkies and a hockey mask. Detective Urrutia testified that gang members use walkie-talkies to scan police frequencies and to communicate with each other on private frequencies. This aids in committing crimes such as "burglaries, which is

4

. . . one of the big things in the 211 Criminal Organization, they tend to do a lot of burglaries, property thefts, and . . . other crimes." He also testified that the hockey mask could be used to conceal the face.

In the Spruce residence, deputies also found many items of evidence connecting defendant Peters to the 211 Criminals. On the dresser were four baseball caps marked with the letter "T", signifying the 211 Criminals. In the closet was a box containing several items, including cards wishing "Joker" (defendant Peters' gang nickname) a happy "C" day (the "C" representing the 211 Criminals), and two photographs depicting gang members, including Efren Acuna. In the same box in the closet, deputies found a California Department of Corrections ID card for defendant Peters, and a California driver's license for Brittney Lewis, the mother of defendant Peters' daughters.


B. *Search of the Long Beach Apartment*

That same morning, Detective Urrutia ran a check of Brittney Lewis' driver's license, which came back with the address of 5254 Atlantic, apartment 307, in Long Beach. At Detective Urrutia's direction, Detective Armando Arevalo and another detective went to that location about 7:30 a.m. Detective Arevalo saw defendant Peters come out of the apartment complex with his two young daughters, Zalyha and Zakai Peters, ages two and five. It appeared they were going to school. Defendant Peters put them in a Malibu automobile, and was about to start the engine when the detectives approached and arrested him. They recovered defendant Peters' keys, among which was a key to apartment 307.

Detective Urrutia obtained a search warrant for that location and was present when it was executed later that morning. In a closet, deputies found hanging two armor plated bullet proof vests and a pair of gloves. In the same closet were 4

5

guns and various types of ammunition: (1) an M-1 carbine, a type of rifle commonly used by gang members because it can hold a large number of rounds and the stock can be cut to a pistol grip (though this one had a full stock); (2) two magazines for the M-1, one of which had a higher capacity than the other; (3) an AK-47 assault pistol with a thumb hole grip capable of being fired by one hand, and a magazine for the gun; (4) a Ruger .9 millimeter semi automatic pistol; (5) a .357 magnum revolver, with loose ammunition; (6) a clear plastic box containing ammunition for the M-1 carbine and the AK-47, as well as for a shotgun, an AR-15 assault rifle, and .40 caliber and .38 caliber pistols; (7) a high capacity magazine for an AR-15 assault rifle; (8) three magazines for a .9 millimeter handgun (some containing ammunition); (9) a high capacity magazine for a .9 millimeter handgun; (10) three magazines for a .45 caliber pistol; and (11) three boxes of ammunition, one for the M-1 carbine, and two for a .9 millimeter.

In a box in the same closet were photographs of defendant Peters, Brittney Lewis, and their two daughters, as well as defendant Peters' declaration of paternity and an envelope addressed to him.

In a backpack belonging to defendant Peters, deputies found two cell phones. Detective Urrutia obtained photographs from both phones, some of which were admitted into evidence, including: (1) six photographs showing defendant Peters holding various firearms, including guns similar in appearance to the Ruger semi automatic and the .357 magnum seized from the Atlantic apartment; (2) two photographs showing him wearing bullet proof vests (one vest seized from the Spruce residence, and one seized from the Atlantic apartment); (3) a photograph of defendant Peters throwing the 211 Criminals' gang sign, a "T"; (4) photographs of defendant Peters' tattooed arms, showing the number "2" on his left arm and the number "11" on his right arm; and (5) photographs showing defendant Peters next

6

to a large amount of marijuana and displaying several $100 bills (according to Detective Urrutia, selling marijuana was one of the ways the 211 Criminals generated income). Also, as in the Spruce residence, deputies found in the Atlantic apartment baseball hats with 211 Criminals insignia.

### III. *Defendant Osborne's Gun*

Defendant Osborne was arrested May 7, 2013. On May 8, 2013, Detective Urrutia executed a search warrant at the apartment Osborne shared with Jonelle Powell, apartment 116 at 1010 Laguna Avenue in Wilmington. In a closet, sitting on top of piled clothing, he found a .45 caliber semi automatic pistol. It was loaded with hollow point bullets, which are designed to inflict maximum damage on the shooting victim. The gun also had laser grips, meaning it could display a laser beam for accurate targeting. In defendant Osborne's wallet and on the bed headboard, Detective Urrutia found a citation and jail booking documents in defendant Osborne's name.

While at the apartment, Detective Urrutia spoke to Jonelle Powell about the items found in the apartment. A few days later, he received a telephone voice message from defendant Osborne in custody. In the message, defendant Osborne claimed ownership of the gun.

### IV. *Additional Gang Testimony*

Los Angeles County Sheriff's Detective Grant Roth testified as the prosecution gang expert. He was assigned to the gang unit, in which "investigators . . . investigate gang related cases that occur within the jurisdiction of [the] Century Sheriff's station." He specialized in seven gangs in the area of Lynwood, including the 211 Criminals, formerly known as the 211 Crips, which had about 50

7

documented members but perhaps as many as 100 members. He worked in the field, investigated crimes, and talked to informants. When the 211 Criminals gang "commit[s] crimes, [he] would assist or conduct the investigation." He might have two or three cases from the gang "come across [his] desk" in a month, and some months none.

He knew Efren Acuna ("Chip"), knew him to be a member of the 211 Criminals and had testified in Acuna's trial. He also knew defendant Peters, and was present in November 2012 when he "self admitted" his gang membership to Detective Urrutia.

Detective Roth never had personal contact with defendant Osborne, but knew of him by "reviewing documentation that we have on [his] gang, his name has come up. . . . His name was brought to my attention during the course of this investigation. There [are] FI cards that we have on file of Mr. Osborne." In his opinion, defendant Osborne was a member of the 211 gang. He identified FI cards prepared on defendant Osborne, which identified him as a member of the 211 Criminals. One card showed that he had tattoos on his left arm of the word "east," the number "2," and "outlaw." On his right arm were tattoos "south," "11" "money" and "pain." Another, prepared in connection with an arrest in Long Beach, stated that he admitted being a 211 Criminals member.

Detective Roth testified that "[t]he primary activities [of the 211 Criminals], things that I personally witnessed they've been involved in is everything from minor vandalism. . . . Narcotics sales. Burglaries. Street robberies. Assaults. Beatings within the neighborhood. Stabbings. . . . Chain snatch robberies. . . . Armed robbery, where they go into stores actually with guns and . . . rob people. Shootings. Shooting at houses. Shooting at people. Shooting at vehicles. Extortion. And even murder." He affirmed that he had "personal knowledge of

8

this." He later explained that his opinion that a primary activity of the gang is robbery is "based on speaking with seasoned investigators that worked at the station long before I got there, talking to people on the street, investigating gang related crimes in the neighborhood. . . . This is information that I've gathered, yes, in cases that I've handled, yes."

Two of the crimes in which the gang "actively participates" are burglary and robbery. To establish these crimes as "predicate acts" for the gang enhancement (which he described a "something that we use to determine a street gang's criminal activity") Detective Roth identified certified copies of minute orders (erroneously referred to at trial as abstracts of judgment) from two prior cases in involving 211 Criminals members. The certified copies were later introduced into evidence.

In the first case, the minute orders documented the conviction of Joseph Holloway Jenkins for residential burglary, alleged to have been committed on January 11, 2011. Detective Roth knew Holloway to be a member of the 211 Criminals.

Regarding the second case, Detective Roth testified that the minute orders documented the conviction of Dion Smith, whom he knew to be a 211 Criminals member, for "[r]obbery. 211 PC." However, the minute orders in the record on appeal show he was mistaken. According to the minute orders, Smith was initially charged with "211 P.C." committed on October 14, 2011. However, the information was amended to allege a second count charging "487C PC," referring to a charge of grand theft from the person in violation of section 487, subdivision (c). Smith then pled no contest to that charge, and the robbery count was dismissed. At trial, the parties and the court did not notice the mistake.

Detective Roth testified that the guns seized from defendants' residences, as well as the bullet proof vests and other items seized from codefendant Peters' residence, were possessed for the benefit of the 211 Criminals.[4]

*Defense Evidence*

Defendant Peters testified that he was living at his mother's house on Spruce Street. He spent one or two nights a week at the Long Beach apartment.

As relevant to the appeal, defendant Peters, who had joined the 211 Criminals at age 17 and was now 33, had tried to leave the gang, but he still considered himself a member, though not active in the gang. He had gone to a "shot caller" and gotten permission to leave. As part of the deal, he was to hold guns and ammunition for the gang. He testified that he was holding the items seized from the Spruce residence for the gang. The .357 magnum pistol was his, and he was holding the .9 millimeter pistol seized from the Long Beach apartment for a gang member named Zane, who belonged to another gang called Tree Top. He denied that the M-1 and AK-47 were at the Long Beach apartment, and claimed that he was not holding those guns for the gang.

Defendant Osborne did not testify and called no witnesses.

## DISCUSSION

I.     *Pattern of Criminal Gang Activity*

Defendants contend that the evidence is insufficient to support the finding of a pattern of criminal gang activity, one of the necessary elements of the gang enhancement.[5] We agree.

---

[4]     The parties stipulated that each defendant had been convicted of a felony.

[5]     Defendant Peters raised this issue in a supplemental brief. Defendant Osborne joined.

As one of its elements, the gang enhancement requires that the gang must engage, or have engaged, in a "pattern of criminal gang activity." (§ 186.22, subds. (e) & (f).) "A pattern of criminal gang activity is 'the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more' specified criminal offenses within a certain time frame, 'on separate occasions, or by two or more persons' (the 'predicate offenses')." (*People v. Tran* (2011) 51 Cal.4th 1040, 1044.) The statutorily defined time period for predicate offenses requires that one of the predicate offenses must have occurred after September 26, 1988, and the most recent crime must have occurred within three years of one of the earlier crimes. (§ 186.22, subd. (e).)

In the instant case, to prove a pattern of criminal gang activity, the prosecution relied on portions of Detective Roth's testimony and certified minute orders (erroneously referred to at trial as abstracts of judgment) from two prior, unrelated cases to show convictions of 211 Criminals gang members for burglary and robbery, both of which are qualifying crimes under section 186.22, subdivision (e). When shown the minute orders from the first case, Detective Roth testified that the orders showed that Joseph Holloway Jenkins, a 211 Criminals gang member, was convicted of residential burglary. An examination of the certified minute orders, which are part of the record on appeal, confirms the burglary conviction, the crime allegedly having been committed on January 11, 2011.

When shown the minute orders from the second case, Detective Roth testified that they showed the conviction of Dion Smith, whom he knew to be a 211 Criminals member, for "[r]obbery. 211 PC." However, an examination of the minute orders shows that Detective Roth was mistaken. They do not document a

robbery conviction.  Rather, they show that Smith was initially charged with "211 P.C." committed on October 14, 2011.  But they also show that the information was amended to allege a second count charging  "487C PC," referring to a charge of grand theft from the person in violation of section 487, subdivision (c).  Smith then pled no contest to that charge, and the robbery count was dismissed.

Nonetheless, consistent with the prosecution's election to use Dion Smith's purported robbery conviction as one of the two chosen predicate acts, the trial court edited the pattern jury instruction, CALCRIM No. 1401, so as to list robbery and burglary as the predicate offenses supporting a finding of a pattern of criminal gang activity.[6]  In argument, the prosecutor argued that the Jenkins and Smith convictions proved the pattern of criminal gang activity:  "You will have the predicate acts.  Jenkins, convicted of burglary.  Dion Smith, convicted of robbery.  Those are predicate acts.  You have those admitted [referring to the minute orders]

---

[6]    The relevant part of the instruction was as follows:
"A pattern of criminal gang activity, as used here, means:
"1.  Any combination of two or more of the following crimes:  Robbery and Burglary;
"2.  At least one of those crimes was committed after September 26, 1988;
"3.  The most recent crime occurred within three years of one of the earlier crimes; AND
"4.  The crimes were committed on separate occasions or were personally committed by two or more persons.
"The crimes, if any, that establish a pattern of criminal gang activity, need not be gang-related.
"The People need not prove that the defendant is an active or current member of the alleged criminal street gang.
"If you find the defendant guilty of a crime in this case, you may consider that crime in deciding whether one of the group's primary activities was commission of that crime and whether a pattern of criminal activity has been proved.
"You may not find that there was a pattern of criminal gang activity unless all of you agree that two or more crimes that satisfy these requirements were committed, but you do not have to all agree on which crimes were committed."

12

showing that the court has found them guilty of both of those predicate acts which have been named."

Thus, under the instruction, as well as the prosecution's election of predicate acts and argument, in finding the gang enhancement true, the jury necessarily concluded that the predicate acts supporting a pattern of criminal gang activity were the conviction of Jenkins for burglary, and the purported conviction of Dion Smith for robbery. But as defendants correctly argue and we have discussed, Dion Smith was not convicted of robbery. Rather, he was convicted of grand theft from the person under section 487, subdivision (c). Thus, under the instruction as given, the evidence was insufficient to support the finding of a pattern of criminal gang activity because the prosecution failed to prove one of the two predicate acts it on which it elected to rely.

We note that this result is especially unfortunate, because (although not mentioned by the parties or the court at trial) the evidence established other predicate acts. Grand theft from the person, the crime for which Dion Smith was actually convicted, is a qualifying crime under section 186.22, subdivision (e)(9). The evidence of Smith's conviction of that offense, which he committed on October 14, 2011, combined with the evidence of Jenkins' burglary conviction for an offense that occurred on January 11, 2011, would have been sufficient to prove the necessary predicate offenses occurring within three years of each other. But the prosecution did not rely on it, and the instruction failed to inform the jury that grand theft from the person was a predicate act.

Also, charged offenses in the present prosecution case can be included in the offenses relied upon to establish the pattern of criminal gang activity. (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1401.) Possession of a firearm by a felon in violation of section 29800, subdivision (a)(1), is a qualifying crime under section

13

186.22, subdivision (e)(31). In the instant case, defendant Peters was convicted of three counts of that offense committed on March 21, 2013, and defendant Osborne was convicted of one count of that offense committed on May 8, 2013. All of these qualifying offenses occurred within three years of Jenkins' burglary conviction. Thus, these offenses would have been sufficient to establish the predicate acts. But, again, the prosecution did not rely on them, and jury was not informed in the instruction that those crimes could qualify as predicate acts.

Respondent contends that despite the insufficiency of the evidence to prove that Dion Smith was convicted of robbery, the jury could nonetheless find robbery to be a predicate offense. Respondent's argument runs as follows. First, Detective Roth identified Smith's conviction as being for "[r]obbery, 211 PC." Although Detective Roth was wrong in stating that Smith had been convicted of robbery, from this testimony the jury would know that robbery is a violation of section 211. Second, the minute orders from Jenkins' prior burglary conviction showed that he admitted a prior conviction of section 211. From this, the jury could infer that Jenkins had committed a past robbery. Supplementing this evidence was Detective Roth's testimony that robbery was one of the gang's primary activities, and the inference that the name of the gang, the 211 Criminals, referred to robbery. According to respondent, from all this evidence the jury could infer that the 211 Criminal gang committed at least two robberies or burglaries and thus engaged in a pattern of criminal gang activity.

The problem with this analysis is that to prove a pattern of criminal gang activity, the most recent predicate offense must have occurred within three years of one of the earlier crimes. (§ 186.22, subd. (e).) Jenkins' prior burglary was committed on January 11, 2011. There was no showing that any 211 Criminals gang member had committed robbery within three years of Jenkins' crime, and

14

because the jury was not instructed that grand theft from the person is a qualifying predicate act, Dion Smith's conviction of that offense cannot be used to establish a conviction of a qualifying offense committed within the statutory time frame.

Respondent also argues that defendants' claim is not really insufficiency of the evidence, but instructional error in listing robbery as a predicate act. As respondent notes, the trial court has a sua sponte duty to instruct on general principles of law *only* if they are supported by substantial evidence. (*People v. Crew* (2003) 31 Cal.4th 822, 835.) Thus, in respondent's view, instructing on robbery as a predicate act was erroneous. Respondent analogizes the error to one in which the court improperly omits an element of a charge or otherwise lessens the prosecution's burden of proving each element beyond a reasonable doubt. Such an error is subject to harmless error analysis to determine whether it was harmless error beyond a reasonable doubt. (See *People v. Gonzalez* (2012) 54 Cal.4th 643, 662-663; *People v. Cox* (2000) 23 Cal.4th 665, 667-668, fn. 7, called into question on another point in *People v. McCall* (2004) 32 Cal.4th 175, 187, fn. 14.)

We disagree with the analogy. Insofar as the instruction on a pattern of criminal gang activity listed robbery as a predicate act, it did not omit an element of the enhancement or otherwise lessen the prosecution's burden of proving any element. As given, the instruction was a correct statement of the law defining the element, including the listing of the two predicate acts – robbery and burglary – both or which qualify as predicate acts under section 186.22, subdivision (e). The instruction also tracked the prosecution's election to use robbery as a predicate act on which to rely. The deficiency at trial was not an omission or legally flawed instruction lessening the prosecution's burden of proving the element of a pattern of criminal gang activity, but an inadequacy of the evidence to prove that element

15

under a legally correct definition. It is thus not an instructional error as that concept is commonly understood, and is not subject to a harmless error analysis. In short, the prosecution failed to prove a pattern of criminal gang activity under a legally correct instruction. We thus conclude that the evidence was insufficient to support the finding of a pattern of criminal gang activity, and reverse the gang enhancement finding.[7] We shall direct that the abstract of judgment to be amended as to defendant Peters to delete the four-year gang enhancement on count 6 and the gang enhancements on the subordinate counts (which the court purported to stay). As to defendant Osborne, the two-year gang enhancement must be deleted.

*Sentencing*

Defendants contend, and respondent concedes, that certain errors in sentencing must be corrected, as follows.

First, the trial court erred in imposing concurrent terms for defendants' prison priors (§ 667.5, subd. (b)). Such priors should have been stricken because they were based on the serious felony convictions that supported the imposition of each defendant's five-year enhancement under section 667, subdivision (a)(1). (See *People v. Jones* (1993) 5 Cal.4th 1142, 1152-1153.)

---

[7] Because we reverse the gang enhancement on this ground, we need not discuss defendants' other challenges to the instruction on that enhancement: the sufficiency of the evidence to support the enhancement, and alleged evidentiary errors in relation to the gang evidence. We also need not discuss defendants' argument that the enhancements for their prior serious felony convictions (§ 667, subd. (a)(1)) must be stricken, as being based on the same facts as the gang enhancement, and that the case should be remanded for the trial court to exercise discretion to impose or strike sentences for the gang enhancement on defendant Peters' subordinate terms.

16

Second, the abstract of judgment for defendant Peters reflects several prison priors, although he was charged with only one, which the court found true. His abstract should reflect a single prison prior, which is stricken.

Third, for reasons not clear from the record, the court erroneously awarded presentence custody credits at a rate of 20 percent. If the court believed a rate of 20 percent applied because defendants had prior strike offenses, the court was incorrect. While the Three Strikes law limits conduct credit on determinate state prison terms to one-fifth (20 percent) of the term of imprisonment imposed once the defendant is received in state prison (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)), it does not limit presentence credits. Rather, a strike offender is entitled to presentence credit calculated under section 4019 before being delivered to prison. (*People v. Thomas* (1999) 21 Cal.4th 1122, 1125-1127; *People v. Caceres* (1997) 52 Cal.App.4th 106, 110.)

It appears the court may have been thinking of section 2933.1, which imposes a 15 percent (not 20 percent) limit on presentence credit for violent felonies listed in section 667.5, subdivision (c). But that section does not apply here, as none of the crimes of which defendants were convicted constitute violent felonies. The record shows that defendant Osborne's counsel informed the court, "[M]y client asks me to ask [the court] this. He should be getting day for day credit during the time in local custody." The court replied, "No. Because of the 186.22 [gang allegation], I believe that denies him." The prosecutor observed that a conviction of witness intimidation with a gang enhancement "would be a violent felony" (see § 667.5, subd. (c)(20)), apparently intending to refer to section 2933.1's limit on credit. The court replied, "But we do not have that here," because the jury deadlocked on the witness intimidation counts. Nonetheless, with no further explanation, the court awarded only 20 percent credit.

17

Suffice it say that the court erred in limiting defendants' presentence credit to 20 percent. They are entitled to standard credit under section 4019. The case must be remanded for the court to properly calculate the presentence credits for each defendant.[8]

//

//

//

//

//

//

//

//

//

//

//

---

[8] In settling on the credit award, the trial court stated in part: "I could be wrong. But I have imposed it at 80 percent [meaning defendants would not get credit on 80 percent of their actual time in presentence custody]. If I'm wrong, . . . obviously, the Department of Corrections . . . would also correct it. . . . Obviously, if the court is incorrect, then it's going to be brought up on appeal and that will be an issue that you'll have on appeal. And I have seen several appeals that have been brought forward where the only thing we had to do is bring it back because the court had given too much credit. And so that's, obviously, the nature of the appeal. All right. So at this point in time I've given the 80 percent credits."

We find very troubling the trial court's stated belief that the appropriate course of action was to award 20 percent credit without determining whether there was a legal basis to do so (there was not), and then leave it to the Department of Corrections to properly calculate the credit to which defendants were entitled or to this court to remand the case after an appeal for a proper calculation. Under long established case law and the California Rules of Court, the trial court has an affirmative duty to accurately calculate a defendant's presentence credit. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30-31; Cal. Rules of Court, rule 4.310.) The court's action here was an abdication of that duty.

## DISPOSITION

As to both defendants, the true finding on the gang enhancement (§ 186.22) is reversed on all counts, and the prior prison term finding (§ 667.5, subd. (b)) is stricken. The matter is remanded to the superior court for the court to recalculate defendants' presentence credits under section 4019.

The clerk of the superior court is directed to prepare amended abstracts of judgment and forward them to the Department of Corrections and Rehabilitation reflecting the proper credit awards, and also reflecting the following. For defendant Peters, the abstract should be amended to delete the four-year gang enhancement on count 6, to delete any reference to the gang enhancement on any subordinate counts, and to reflect a single prison prior that is stricken. For defendant Osborne, the abstract should be amended to delete the two-year gang enhancement, and to reflect a single prison prior that is stricken. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:



EPSTEIN, P. J.                    COLLINS, J.


19