Filed 6/18/21  P. v. Xiong CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHUE HUE XIONG,<br><br>Defendant and Appellant. | C091096<br><br>(Super. Ct. No. 18FE020554) |

After defendant Chue Hue Xiong shot and killed Mario Perez-Arzola and wounded E.M., a jury found him guilty of first degree murder, attempted murder, and being a felon in possession of a firearm.  He appeals his convictions for first degree murder and attempted murder arguing:  1) trial counsel was ineffective in failing to request a jury instruction on voluntary intoxication; 2) the trial court erred in denying counsel's request the jury be instructed on assault with a deadly weapon as a lesser included offense of attempted murder; and 3) relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court's failure to hold a hearing on his ability to

1

pay fines and fees violated his due process rights and the right to be free of excessive fines. We conclude: 1) counsel was not ineffective as there was not sufficient evidence to support a voluntary intoxication instruction; 2) assault with a deadly weapon is not a lesser included offense of attempted murder; and, 3) as defendant's sentencing occurred almost a year after *Dueñas* was decided, we find that issue forfeited. Accordingly, we affirm the judgment.

## FACTUAL BACKGROUND

E.M. and Mario Perez-Arzola shared a homeless encampment. One morning at approximately 4:00 a.m., defendant[1] and an accomplice came to the encampment. Defendant was armed with a loaded shotgun and his accomplice with a crowbar. Defendant was looking for "Goofy,"[2] who defendant thought had cheated him from his share of the proceeds of a burglary they had committed together. E.M. saw defendant had a gun and tried to calm him down. The night before the shooting, E.M. and Goofy had switched bikes. Defendant demanded to know where Goofy was and threatened to blow E.M.'s brains out. E.M. said this exchange went on for about an hour. Then Perez-Arzola came to the area, asked what was happening, and tried to calm the situation down.

---

[1]    E.M. identified the shooter as "Chue" in his statements to responding police officers immediately after the shooting and to detectives the day after the shooting. He had known Chue a couple of months. He also later identified Chue as the shooter to a district attorney's office investigator.

At trial, E.M. testified that the shooter had something wrapped around his face. He said the shooter had demanded everything E.M. had, and E.M. gave him a necklace and wallet. E.M. said he wanted to dismiss everything he had said to officers because he was panicking at the time. He also testified he did not remember identifying defendant to the police officers. E.M. told a district attorney's office investigator he was not going to testify truthfully because the second suspect was still at large and he was concerned for the safety of himself, his friends, and his family.

[2]    E.M. testified he did not know "Goofy's" given name.

He spoke to defendant for another 10 to 15 minutes. At this point, a second person "came out of nowhere" and hit E.M. on the hand with a crowbar. This got defendant "all hyped up again." Defendant then turned, and pointed the shotgun at Perez-Arzola, and shot him in the chest. E.M. dove back into his camp and begged defendant not to shoot him. Defendant did not say anything, "He was looking at me 'cause I can tell he didn't wanna shoot me. I can tell he didn't want to." Then, defendant shot him in his right shoulder. After defendant shot him, E.M. lay there and "played possum." When he heard defendant and the other person leave, E.M. got up and ran through a field to a nearby street where he saw someone he knew, Chris Ashenfarb. Ashenfarb called 911.

E.M. had never had any conflicts with defendant. In fact, E.M. reported the day before he and defendant were smoking marijuana laced with methamphetamine together. E.M. had never known defendant to be violent, including times when he was getting "his ass whooped" and did not fight back. The only explanation E.M. could think of as to why defendant would shoot him was because he knew defendant "shoots that meth shit up. So I know he be trippin" and, "He did drugs. He was on drugs." Later, when speaking to a district attorney's office investigator, E.M. indicated he thought defendant shooting him and Perez-Arzola might have been racially motivated.

Sacramento Police Officers Chai Vang, Sam Vito, and Anthony Gamble responded to the scene. E.M. told Officer Vang "Chue" had shot him with a shotgun. E.M. told Officer Vito there was another victim in the field. Officer Vito went into the field and found Perez-Arzola and determined he had died. Officer Gamble spoke further with E.M. E.M. told Gamble "Chue" had shot him. As E.M. was being transported to the hospital, Gamble followed, did a records check, and found information on defendant. He pulled a recent booking photo of defendant and showed it to E.M. as he was coming out of the ambulance. E.M. identified defendant's photograph as the shooter. E.M. did not mention any other people at the scene and denied he had been punched or kicked.

3

A few days later, officers arrested defendant in the garage of his family's home. In the garage they found a can with shotgun cartridges. Defendant's fingerprint matched a print on the can. The cartridges were consistent with shotgun pellets recovered from Perez-Arzola's body.

E.M. later identified the second person at the scene, the one who had hit him with the crowbar. At that interview, he indicated defendant did not start shooting until that person had whispered something in defendant's ear. He said he thought they were looking for Goofy, came to the wrong campsite and "I guess . . . [¶] . . . [¶] . . . they were just on a rampage. [¶] . . . [¶] . . . I have no clue honestly."

PROCEDURAL HISTORY

An information charged defendant with murder (Pen. Code, § 187, subd. (a) – count one),[3] attempted murder (§§ 664/187, subd. (a) – count two), and being a felon in possession of a firearm (§ 29800, subd. (a)(1) – count three). As to both the murder and attempted murder charges, the information alleged defendant had intentionally and personally discharged a shotgun (§ 12022.53, subds. (b), (c), & (d).) The information also alleged defendant had a prior serious felony conviction for first degree burglary (§§ 1192.7, subd. (c), 667, subds. (b)-(i)). A jury found defendant guilty on all counts, found both firearm enhancement allegations true, and found the prior serious felony conviction true.

The trial court sentenced defendant to an aggregate term of 100 years to life plus 18 years. Defense counsel requested, based on the interest of justice, that the trial court reduce the restitution fine (§ 1202.4) given defendant's lengthy sentence, from the recommended $10,000 to the statutory minimum of $300. The trial court ordered defendant to pay a $1,000 restitution fine (§ 1202.4), imposed and stayed an identical

---

**3**     Undesignated statutory references are to the Penal Code.

parole revocation fine (§ 1202.45), a $120 court operations assessment (§ 1465.8, subd. (a)(1)), and a $90 court facility fee (Gov. Code, § 70373). The trial court struck the main jail booking (Gov. Code, § 29550.2) and classification fees (Gov. Code, § 29550.2), and since defendant was going to prison, also struck the cost of the probation report.

DISCUSSION

I

*Ineffective Assistance of Counsel*

Defendant contends he received ineffective assistance of counsel because his trial counsel did not request jury instruction CALCRIM No. 625 on voluntary intoxication. He claims there was substantial evidence of voluntary intoxication and based on this evidence the jury could have found voluntary intoxication affected his ability to premeditate and harbor malice.

To prevail on a claim of ineffective assistance of counsel, defendant must prove by a preponderance of the evidence that his trial counsel's representation failed to meet an objective standard of reasonableness, and that absent counsel's deficient performance, there is a reasonable probability the result would have been more favorable to defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674].) As to the first prong, our scrutiny of counsel's performance is "highly deferential" and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Id.* at p. 689.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.)

"Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice

5

aforethought." (§ 29.4, subd. (b).)  A defendant is entitled to an instruction on voluntary intoxication as a defense to a specific intent crime "only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.'  (*People v. Horton* (1995) 11 Cal.4th 1068, 1119; see also *People v. Saille* (1991) 54 Cal.3d 1103, 1117 [explaining that a defendant charged with murder is free to show that 'because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill' (original italics)].)"  (*People v. Williams* (1997) 16 Cal.4th 635, 677 (*Williams*).)  Merely showing that defendant consumed alcohol or drugs before committing a crime, without evidence of their effect on him, is insufficient to warrant an instruction on voluntary intoxication. (*Id*. at pp. 677-678 [even if evidence of the defendant's voluntary intoxication was " 'substantial,' " the instruction was properly denied because "there was no evidence at all that voluntary intoxication had any effect on defendant's ability to formulate intent"].) In reviewing the evidence supporting an instruction, we construe the record in the light most favorable to the defendant.  (*People v. Wright* (2015) 242 Cal.App.4th 1461, 1483 (*Wright*).)

The facts here are similar to those in *Williams*, where our Supreme Court found insufficient evidence to warrant a voluntary intoxication instruction.  In *Williams*, the defendant relied on a witness's testimony that the defendant was " 'probably spaced out' " on the morning of the killings, and comments the defendant made in a recorded interview with police that around the time of the killings, he was " 'doped up' and 'smokin' pretty tough then.' "  (*Williams, supra*, 16 Cal.4th at p. 677.)  The *Williams* court concluded, "even if we consider all three of these statements, there was no error. Assuming this scant evidence of defendant's voluntary intoxication would qualify as 'substantial,' there was no evidence at all that voluntary intoxication had any effect on defendant's ability to formulate intent."  (*Id*. at pp. 677-678.)

6

The evidence proffered here, not unlike the evidence deemed insufficient in *Williams*, is scant. And, the same conclusion applies; that is, this evidence is insufficient to warrant an instruction on voluntary intoxication. The only evidence of defendant's intoxication was E.M.'s speculation that defendant shot him because he "shoots that meth shit up. So I know he be trippin" and, "He did drugs. He was on drugs." E.M. also stated at some time the day before the shooting he and defendant had smoked a methamphetamine-laced marijuana cigarette together. Even if we assume E.M.'s statement that defendant "was on drugs" to mean defendant was under the influence of drugs at the time of the murder and attempted murder, there is no evidence showing what drugs defendant had consumed, how much, when he consumed it, or over what period of time. Furthermore, just as in *Williams*, there was no evidence that defendant's voluntary intoxication had any effect on his ability to formulate intent.

Construing the evidence in the light most favorable to defendant (see *Wright, supra*, 242 Cal.App.4th at p. 1483), we conclude the record is devoid of substantial evidence to support a finding defendant was voluntarily intoxicated at the time of the shooting. Moreover, even if such scant evidence was substantial, we further conclude the record is devoid of evidence, much less substantial evidence, that his (alleged) voluntary intoxication "had any effect on defendant's ability to formulate intent." (*Williams, supra*, 16 Cal.4th at p. 678.) Given the state of the evidence, defendant's trial counsel could have made a reasonable tactical decision not to request an instruction on voluntary intoxication. Had such a request been made, the trial court could have properly denied it. The failure to make a futile or unmeritorious argument is not deficient performance. (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1092.) Accordingly, the failure to request such an instruction did not amount to ineffective assistance of counsel.

7

## II

### *Denial of Request for Instruction*

Defendant contends the trial court erred in denying his request to instruct the jury on assault with a deadly weapon as a lesser included offense of attempted murder. Defendant argues assault with a deadly weapon was a lesser included offense of attempted murder because of the firearm enhancement attached to the charge. Defendant acknowledges California Supreme Court authority holding that enhancements may not be considered as part of the accusatory pleading for purposes of determining whether the offense is lesser included (*People v. Wolcott* (1983) 34 Cal.3d 92, 101-102), but argues that authority was overruled under *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435].

### *Additional Background*

In the course of finalizing instructions, defense counsel requested the trial court give an instruction on assault with a firearm as a lesser included offense of attempted murder.[4] The People opposed the request. The trial court asked defense counsel for authority supporting the assault with a firearm as a lesser included offense, and counsel indicated she was requesting the instruction based on E.M.'s testimony that he did not think defendant intended to kill him and did not want to shoot him.[5] The trial court denied the request concluding there was not a basis to give the instruction.

---

[4] The defense request and People's objection apparently occurred in e-mails. Those e-mails are not in our record on appeal.

[5] Defense counsel did not make the argument in trial court that defendant now raises on appeal. Nonetheless, because the trial court has a sua sponte duty to instruct on lesser included offenses, if appropriate, the issue is not forfeited. (See *People v. Breverman* (1998) 19 Cal.4th 142, 148-149; *People v. Jennings* (2019) 42 Cal.App.5th 664, 678.)

8

*Analysis*

A trial court has a sua sponte duty to instruct on all necessarily included offenses supported by the evidence. (*People v. Breverman, supra,* 19 Cal.4th at pp. 148-149.) A lesser offense is included in a greater offense if either the statutory elements of the greater offense or the facts actually alleged in the accusatory pleading include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. (*People v. Smith* (2013) 57 Cal.4th 232, 240, 244; *People v. Alarcon* (2012) 210 Cal.App.4th 432, 436 (*Alarcon*).)

It is well settled that assault with a firearm is not a lesser included offense of attempted murder. (*People v. Parks* (2004) 118 Cal.App.4th 1, 6.) Moreover, assault with a firearm does not become a lesser included offense of attempted murder when the accusatory pleading includes firearm allegations. (*People v. Wolcott* (1983) 34 Cal.3d 92, 98, 100-102 (*Wolcott*) [holding assault with a deadly weapon was not a lesser included offense of robbery, and the "addition of an allegation that defendant used a firearm . . . does not alter this conclusion"]; *Alarcon, supra*, 210 Cal.App.4th at pp. 436-439 [assault with a firearm not a lesser offense of attempted murder with firearm enhancement]; *People v. Bragg* (2008) 161 Cal.App.4th 1385, 1398 [same].)

In *Wolcott*, our Supreme Court explained that the inclusion of firearm allegations did not result in a new offense, but merely provided for additional punishment for an offense in which a firearm was used. (*Wolcott, supra*, 34 Cal.3d at p. 100.) The court reasoned that considering the enhancement allegation as part of the accusatory pleading for the purpose of defining a lesser included offense would "confuse the criminal trial." (*Id*. at p. 101.)

Defendant argues *Wolcott* is at odds with *Apprendi v. New Jersey, supra,* 530 U.S. 466, 494. Not so. *Apprendi* requires that a jury find true any fact that increases the defendant's sentence. The jury fulfilled that requirement here: it specifically found both firearm enhancements true. Nothing in *Apprendi*'s " 'narrow' holding" (*People v.*

9

*Contreras* (2013) 58 Cal.4th 123, 149) suggests it applies to the wholly distinct question of instruction on lesser included offenses, which is a matter of California law alone. (*Alarcon, supra*, 210 Cal.App.4th at p. 438.)

Our California Supreme Court has repeatedly affirmed "the vitality of *Wolcott* and the limited scope of *Apprendi*." (*Alarcon, supra*, 210 Cal.App.4th at p. 437; *People v. Sloan* (2007) 42 Cal.4th 110, 122-123 [enhancements may not be considered in determining whether an offense is necessarily included within another crime, for purposes of the rule prohibiting multiple convictions based on necessarily included offenses]; *People v. Izaguirre* (2007) 42 Cal.4th 126, 130-134 [*Apprendi* did not mandate that enhancement allegations are subject to being struck under the multiple conviction rule]; *Porter v. Superior Court* (2009) 47 Cal.4th 125, 137 [*Apprendi* does not "require[] us to treat penalty allegations as if they were actual elements of offenses for all purposes under state law"].) We can discern no reason to depart from these well-reasoned precedents and conclude the trial court properly refused to instruct on a lesser charge of assault with a firearm.

III

*Ability to Pay Hearing*

Relying on *Dueñas, supra,* 30 Cal.App.5th 1157, defendant contends the failure to hold an ability to pay hearing before imposing the fines and fees constituted a violation of his due process rights and his right to be free from excessive fines. Defendant claims the issue is not forfeited because trial counsel raised the issue of defendant's ability to pay at sentencing.

Defendant was sentenced in December 2019, almost a full year after *Dueñas* was decided. Thus, at the time of the sentencing hearing, there was authority for requesting an ability to pay hearing. Defense counsel did not request an ability to pay hearing or object to the fines imposed. Rather, based on the interest of justice given defendant's lengthy sentence, defense counsel requested a reduction of the restitution fine.

10

Defendant's failure to raise *Dueñas* at sentencing forfeits this argument on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351-354 [to preserve a sentencing issue for review, it must be raised in the trial court]; cf. *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 [finding the defendant did not forfeit *Dueñas* argument because it was decided *after* sentencing]; see *People v. Aguilar* (2015) 60 Cal.4th 862, 866-867 [defendant's failure to object at sentencing to certain fees on the basis of his inability to pay forfeited the challenge on appeal].)

DISPOSITION

The judgment is affirmed.


        /s/
HOCH, J.



We concur:



  /s/
MAURO, Acting P. J.



  /s/
DUARTE, J.

11