Filed 5/22/26  P. v. Macedoalejo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084450 |
| v. | (Super.Ct.No. FVI20002564) |
| MIGUEL ANGEL MACEDOALEJO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Miriam Ivy Morton, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortino and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Miguel Macedoalejo[1], guilty of (1) assault (Pen. Code, §240)[2] (Count 1); (2) resisting an executive officer (§ 69) (Count 2); and (3) taking a weapon, other than a firearm, while resisting a peace officer (§ 148, subd. (b)) (Count 3). The trial court granted defendant formal probation for a period of 24 months, with the condition that he serve eight days in jail.

Defendant raises four issues on appeal. First, defendant contends the trial court erred in the jury instruction regarding an officer's performance of her official duties (CALCRIM No. 2670), because the court did not instruct the jury that defendant could be found not guilty in Counts 2 and 3 if the officer was not lawfully performing her duties. Second, defendant contends he was denied effective assistance of trial counsel, in part by counsel failing to argue that the officer was not lawfully performing her duties. Third, defendant asserts the trial court erred by not instructing the jury on lesser included offenses for the charge of resisting an executive officer (§ 69). Fourth, defendant asserts the cumulative impact of the alleged instructional errors warrants reversal. We affirm.

---

[1] The People charged and convicted defendant under the last name Macedoalejo. However, in documents filed by the defense and in defendant's handwritten signature, his last name is spelled Macedo Alejo.

[2] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

## FACTS

A.   <u>DEFENDANT'S CRIMES</u>

In September 2020, defendant was residing with his ex-girlfriend (Ex-girlfriend) and her teenage child (Child). On September 2, 2020, defendant and Ex-girlfriend argued; defendant had Ex-girlfriend's car key and refused to let her and Child leave the house. During the argument, Child dared defendant to call 911. Defendant made the call and Child shouted most of their address to the 911 operator before the call ended.

When San Bernardino County Sheriff's Deputy Curtis (Curtis) arrived at the house, defendant and Ex-girlfriend were in a vehicle parked in the driveway. Ex-girlfriend was in the driver's seat, and defendant was sitting behind her, in the backseat. As Curtis approached the vehicle, she instructed Ex-girlfriend to step outside the vehicle. Ex-girlfriend did not comply with the instruction. Curtis asked Child, who was outside the house, why 911 was called. Child said there had been a fight between Ex-girlfriend and defendant.

Curtis instructed defendant to step outside of the vehicle. Ex-girlfriend said defendant could not exit the vehicle. Curtis asked, "Why can't he step out?" Ex-girlfriend replied, "Because I said so." Curtis opened the vehicle door next to defendant. Ex-girlfriend told Curtis, "[Y]ou can't go into my Car." Curtis replied, "I can because now I have a call for service." Curtis leaned her head and torso into the vehicle and grabbed defendant's hands. Defendant said to Curtis, "No, no touching me." Curtis said to defendant, "Undo the seatbelt." It is unclear how defendant was

3

supposed to comply with Curtis holding his hands. Defendant said, "No." Ex-girlfriend said, "No, you cannot take him out [of the car]."

Defendant freed one of his hands and reached toward the Taser on Curtis's belt, touching the handle of the Taser. Curtis managed to again gain control of defendant's free hand. Curtis thought she saw Ex-girlfriend trying to put the key in the ignition to start the vehicle, which would result in Curtis being dragged with her body half outside the vehicle. Defendant, in Spanish, said, "Now, graba, graba, rapido," which means "record, record, quickly." Curtis, who does not speak Spanish, "heard it as 'drava.' [Curtis] thought maybe [defendant] was telling [Ex-girlfriend] to drive."

In response, Curtis drew her Taser with her right hand, while continuing to hold defendant's hands with her left hand. Curtis pressed the Taser against Ex-girlfriend's left shoulder blade. Ex-girlfriend dropped the hand that was holding the car key. Defendant again freed his right hand, and he reached toward his right pocket or the seatbelt release. Curtis pointed the Taser at defendant. Defendant reached for the Taser. Curtis used the Taser's stun function to stun defendant.

Defendant grabbed the Taser with both hands, pulling Curtis closer toward defendant. Curtis and defendant struggled over the Taser. Defendant took the Taser away from Curtis. Defendant pointed the Taser at Curtis's face. Curtis saw that the Taser was still in the "on" position from her having used the stun function. Curtis shut the vehicle door, drew her firearm, moved to the back of the vehicle, and held defendant and Ex-girlfriend at gunpoint until other deputies arrived.

4

B.     CURTIS'S TRIAL TESTIMONY

On cross-examination, Curtis said she opened the vehicle door next to defendant because Ex-girlfriend said defendant could not open the door. That caused Curtis to think defendant "physically could not open the door." Curtis explained, "So, because I need[ed] to conduct an investigation for a domestic violence situation and I could not see him, I could not see his hands, anything like that, I opened the door." Curtis said that opening the door allowed her to "have a better visual of everything" that defendant had near him, such as a possible weapon pointed at Ex-girlfriend.

The cross-examination continued:

"[Defense Counsel]: As soon as you open the door he's there?

"[Curtis]: Yes, sir.

"[Defense Counsel]: And then you lean into the car; correct?

"[Curtis]: I have ahold of the defendant's hands. Yes. So part of my body is in the car."

Defense counsel asked why Curtis did not wait for additional deputies before engaging with defendant. Curtis replied, "[B]ased on my training and experience and how inherently dangerous domestic violence calls for service are, not only to myself but to everybody involved, I need to separate all involved parties." Curtis further explained, "[E]specially in domestic violence situations we never want to have the victim or suspect next to each other because we don't want the victim in fear of telling us the truth because the suspect will hear it. Also, we don't want them fighting with each other."

5

Curtis said Ex-girlfriend was not crying and did not appear to be physically harmed. Curtis based her belief that violence had occurred on Child's comment that there had been a fight. Defense counsel asked what the word "fight" meant to Curtis. Curtis said, "It could mean numerous things."

Defense counsel asked why Curtis did not tell Ex-girlfriend and defendant that she needed to speak to them separately, so as to help them understand they were not under arrest. Curtis replied, "Prior to conducting any investigation, especially when it comes to a domestic violence situation, it's important to pat down who you're talking to. It's important to ensure that, especially as a single person unit like myself, it's important to ensure that neither party has any weapons on them. So me telling him to get out of the car, I don't mean to be rude, but I don't have to tell him why I need him to get out of the car."

## DISCUSSION

### A. CALCRIM NO. 2670

#### 1. *OPTIONAL STANDARD LANGUAGE*

CALCRIM No. 2670 provides the law pertaining to the duties of a peace officer. The standard instruction includes the following optional language: "[If a person knows, or reasonably should know, that a peace officer is arresting or detaining him or her, the person must not use force or any weapon to resist an officer's use of reasonable force. [However, you may not find the defendant guilty of resisting arrest if the arrest was unlawful, even if the defendant knew or reasonably should have known that the officer was arresting him or her.]]"

6

## 2.   *INSTRUCTION GIVEN*

The version of CALCRIM No. 2670 given to the jury began with the following two sentences:  "The People have the burden of proving beyond a reasonable doubt that [Deputy] Curtis was lawfully performing her duties as a peace officer.  If the People have not met this burden you must find the Defendant not guilty of Assault on [a] Peace Officer With a Deadly Weapon."  Defendant was charged with assault with a deadly weapon on a peace officer in Count 1.  (§ 245, subd. (c).)  For Count 1, the jury found defendant guilty of the lesser included offense of simple assault.  (§ 240.)

Of the optional language discussed *ante*, the instruction included the language from the first bracket, i.e., "If a person knows, or reasonably should know."  But it omitted the language from the second bracket, i.e., "However, you may not find the defendant guilty of resisting arrest if the arrest was unlawful, even if the defendant knew or reasonably should have known that the officer was arresting him or her."

## 3.   *ANALYSIS*

Focusing on Counts 2 (§ 69) and 3 (§ 148), defendant contends the trial court's version of CALCRIM No. 2670 was erroneous because it failed to instruct the jury to find defendant not guilty if Curtis unlawfully detained defendant.[3]

---

[3] The People assert defendant forfeited this issue by failing to object to the CALCRIM No. 2670 instruction in the trial court.  "[F]ailure to object to instructional error will not result in forfeiture if the substantial rights of the defendant are affected." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)  Defendant contends the alleged error violated his right of due process.  Because defendant asserts the alleged error violated his constitutional rights, we will address the merits of the issue.

7

We apply the de novo standard of review when reviewing the propriety of jury instructions. (*People v. Mitchell*, *supra*, 7 Cal.5th at p. 579.) " 'It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' " (*People v. Bragg* (2008) 161 Cal.App.4th 1385, 1395-1396.)

CALCRIM No. 2670, as given to the jury, indicated that it applied only to Count 1 because it exclusively referenced Count 1. To determine if an error occurred, we look to the instructions given for Counts 2 and 3 to see if they informed the jury that defendant should be found not guilty if Curtis acted unlawfully.

In the jury instructions for Counts 2 and 3, the jury (1) was instructed that the offenses required Curtis to be engaged in the duties of her job; (2) was given a list of duties that sheriff's deputies perform; and (3) was instructed, "A Peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone, or using unreasonable or excessive force in his or her duties." (CALCRIM Nos. 2652 & 2653.) Thus, for both Counts 2 and 3, the jury was informed that an officer has to be lawfully performing her duties, and that an officer is not lawfully performing her duties if she is unlawfully detaining a person. Accordingly, the trial court instructed the jury that if Curtis unlawfully detained defendant or used excessive force, then defendant was not guilty. Accordingly, the trial court did not err.

8

## B.     INEFFECTIVE ASSISTANCE OF COUNSEL

### 1.     *CALCRIM NO. 2670*

Defendant contends his trial counsel was ineffective because he did not request that CALCRIM No. 2670 include the sentence "However, you may not find the defendant guilty of resisting arrest if the arrest was unlawful, even if the defendant knew or reasonably should have known that the officer was arresting him or her."  As explained *ante*, the instructions for Counts 2 and 3 included the relevant information.  Accordingly, counsel did not render ineffective assistance as to the instruction.

### 2.     *CLOSING ARGUMENT*

Defendant contends his trial counsel was ineffective because he "failed to challenge the lawfulness of [Curtis's] conduct."[4]

During closing argument, defense counsel asserted that Curtis did not know what, if any, crime had been committed at the house.  Nevertheless, Curtis "throws herself into the mix, inside the car, or half into the car.  [¶]  That is not proper protocol to keep safe....  There's no rush.  They're detained.  He's not driving.  He's in the back....  [¶]  … And—and she jumped in there, putting herself in danger and endangering him, too, and [Ex-girlfriend]."  Defense counsel continued, "I mean, this is the beginning.  This is not even probable cause.  This is not, He's got a gun.  He's got a record.  Nothing."

---

[4] Defendant's trial counsel was privately retained.  In a criminal case, a defendant who retains private counsel has the same constitutional right to effective assistance as a defendant whose lawyer is appointed by the court. (*Mickens v. Taylor* (2002) 535 U.S. 162, 168-169, fn. 2.)

Defense counsel's closing argument presented the theory that Curtis was the aggressor in the situation. He asserted that, without any knowledge of whether a crime may have occurred, Curtis leaned into the vehicle and engaged in a cascade of antagonistic conduct. As explained *ante*, the jury was instructed that if Curtis used unreasonable force against defendant, then defendant should be found not guilty. We understand defense counsel's argument as asserting Curtis's conduct involved an unreasonable level of force. Accordingly, defense counsel did not fail to challenge the lawfulness of Curtis's conduct.

Defendant asserts his trial counsel erred because he "also failed to challenge the lawfulness of [Curtis's] initial contact." First, it is established that "counsel does not render ineffective assistance by choosing one or several theories of defense over another." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1007.) Thus, we are not persuaded that defense counsel was ineffective for failing to make an additional defense argument.

Second, the prosecutor argued, "But when [Curtis] asked him to leave the vehicle, he reaches for her weapons. When he reaches for her duty belt, that's using force or violence. When he takes hold of that Taser and eventually pulls it from her hand, that is using force or violence." Given the prosecutor's argument, the relevant time period for the crimes was when Curtis was inside the vehicle—not when she initially arrived at the house. Therefore, there was a logical basis for defense counsel to focus on the events inside the vehicle as the situation escalated inside the vehicle.

### 3. *POST-VERDICTS*

#### a. Procedural History

On April 17, 2023, defense counsel was present when the trial court and parties discussed alleged juror misconduct that occurred during the trial. Defense counsel said he intended to file a motion for new trial by April 24, 2023. Defense counsel did not file the motion.

At a scheduled hearing on April 28, 2023, the trial court said to defendant, "We have tried to contact your attorney today, and we are not able to contact him. The phone numbers we have either indicate that the mailbox is full, and he doesn't answer, or that the number is not able to receive messages. It is now 11:20. We have tried multiple times throughout the morning." The trial court offered to appoint the public defender's office to represent defendant, and defendant agreed. The trial court relieved defense counsel of his representation of defendant and appointed the public defender, who, on June 20, 2023, filed a motion for new trial on behalf of defendant based upon alleged instructional errors.

#### b. Analysis

Defendant contends that, after the verdicts were rendered, his defense counsel rendered ineffective assistance by abandoning defendant.

A claim of ineffective assistance of counsel requires a defendant to "establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that

11

defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham*, *supra*, 25 Cal.4th at p. 1003.)

We will assume that defense counsel's abandonment of defendant establishes his performance fell below an objective standard of reasonableness. We now turn to the issue of prejudice. Given that defendant was immediately represented by the public defender, and the motion for new trial was filed, we fail to see how defendant was prejudiced by the abandonment.

Defendant asserts he suffered prejudice as to the alleged juror misconduct issue because defense counsel's "failure to promptly investigate and litigate the issue forfeited [defendant's] opportunity to create a factual record or secure relief." Defendant provides no record citations to support his implied assertions that (1) defense counsel had better access to juror misconduct evidence than the public defender, and (2) the juror misconduct issue was forfeited due to a delay in securing evidence. Due to the lack of record citations to support these assertions, we are not persuaded that defendant suffered prejudice. Thus, ineffective assistance of counsel has not been demonstrated.

C.     LESSER INCLUDED OFFENSE INSTRUCTIONS

For Count 2—resisting an executive officer (§ 69)—defendant contends the trial court erred by not instructing on two lesser included offenses: (1) resisting a peace officer without force (§ 148, subd. (a)(1)), and (2) simple assault (§ 240). Under the statutory elements test, neither offense (§§ 148, subd. (a)(1), 240) is a lesser included offense of resisting an executive officer (§ 69). (*People v. Morgan* (2026) 19 Cal.5th

12

132, 143["[R]esistance by force or violence under section 69 does not necessarily include the crime of assault"]; *People v. Smith* (2013) 57 Cal.4th 232, 241 ["[S]ection 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each offense"].) For the sake of judicial efficiency, we will assume, without deciding, that the lesser offenses are included under the accusatory pleading test.

A trial court must instruct on necessarily included lesser offenses " 'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Smith*, *supra*, 57 Cal.4th at p. 239.)

Resisting an executive officer requires the defendant use force or violence in resisting. (§ 69, subd. (a).) Defendant's conviction on Count 2 is based upon him struggling with Curtis over her Taser and taking her Taser away from her. The evidence reflects: defendant grabbed the Taser with both of his hands, pulling Curtis closer to him. Curtis "refused to let go of [her] [T]aser," so the two struggled over the Taser. Defendant pulled the Taser out of Curtis's hands. Defendant's acts of struggling with Curtis over the Taser and pulling the Taser out of her hands support the finding that defendant used physical force in resisting Curtis. (§ 69, subd. (a).)

Under section 148, force or violence is not required when resisting a peace officer. (§ 148, subd. (a)(1).) Given that defendant struggled with Curtis over the Taser and forcibly pulled the Taser from her hands, the evidence only supports a finding that he resisted with force (§ 69, subd. (a)). If the jury discredited that evidence, then it would have found defendant not guilty. There is no evidence of a version of events that

13

lacked a use of force by defendant. Accordingly, the record does not support instructing the jury on resisting a peace officer without force (§ 148, subd. (a)(1)).

Simple assault requires an attempt and ability to inflict a violent injury on another person. (§ 240.) Count 2 was focused on the struggle over the Taser, in which both of defendant's hands were on the Taser. We do not see evidence of defendant attempting to injure Curtis at that point in the incident. Rather, the evidence reflects defendant's energy was focused on taking the Taser.

Defendant contends, "The evidence presented at trial supported a finding that [defendant] resisted Deputy Curtis without using force or violence. Substantial portions of the encounter consisted of verbal refusals, passive resistance, and [defendant's] refusal to exit the car—conduct that may support a conviction under section 148(a)(1) but fall short of forcible resistance under section 69." The focus of Count 2 was defendant's struggle with Curtis over the Taser, which included him pulling the Taser out of her hands. Given that focus, we are not persuaded by defendant's reliance on other moments of the overall incident.

We give the following background before addressing defendant's next theory. In Count 1, defendant was charged with using a deadly weapon to assault a peace officer. (§ 245, subd. (c).) That count was focused on defendant's act of pointing the Taser at Curtis. When testifying, Curtis described the Taser as "a less than lethal force option," "less lethal," and "non-lethal." The jury found defendant not guilty of using a deadly weapon to assault a peace officer (§ 245, subd. (c)), and not guilty of the lesser included

14

offense of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found defendant guilty of the second lesser included offense of simple assault. (§ 240.)

In asserting the trial court should have instructed on lesser included offenses in Count 2, defendant makes the following assertion: "[T]he prosecution's theory of force was grounded solely in the alleged attempt to grab or struggle over Deputy Curtis's Taser. But if the jury believed [defendant] committed an act that constituted excessive or unjustified force, yet not to the degree necessary to convict under section 69, it could have found [defendant] guilty of simple assault. The jury was so instructed on assault in Count 1 and returned a conviction for simple assault for the same conduct. [Citation.] That outcome suggests the jury found [defendant] used some degree of force but was not satisfied [that Curtis] was lawfully performing her duties, or that [defendant's] conduct rose to the level required under section 69."

In our view, the jury reasonably rejected the deadly weapon charges in Count 1 because it found the Taser was not a deadly weapon due to Curtis repeatedly describing the Taser as a less than lethal weapon. Accordingly, the Count 1 verdicts do not demonstrate that lesser offense instructions should have been given in Count 2. In sum, the trial court did not err.

D.      CUMULATIVE IMPACT

Defendant contends the cumulative impact of the alleged instructional errors resulted in a violation of his rights to due process and a fair trial. We have found no errors, and therefore "there is nothing to cumulate." (*People v. Duff* (2014) 58 Cal.4th 527, 562.)

# DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

FIELDS
J.